UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DAMEION DOUGLAS,                                    Case No. 6:18-cv-00533-AA

               Plaintiff,                         OPINION AND ORDER

    v.

A. PEARLSTEIN; KURUNA
THOMPSON; MELISSA DAVIDSON;
STUART YOUNG; DENNIS HOLMES;
K. SALING; JOHN DOE,

               Defendants.

_____

AIKEN, District Judge.

       Plaintiff, an adult in custody (AIC) with the Oregon Department of Corrections (ODOC), filed suit under 42 U.S.C. § 1983 alleging violations of the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Now before the Court are Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Partial Summary Judgment. For the following reasons, Plaintiff's motion is denied, Defendants' motion is granted, and this case is dismissed.

1 - OPINION AND ORDER

## DISCUSSION

Plaintiff, an AIC housed at the Oregon State Penitentiary (OSP), is Muslim and a member of the Nation of Islam (NOI). Plaintiff claims that Chaplains Thompson and Perlstein violated his rights to religious freedom and equal protection by: 1) failing to provide halal meals prepared by a third-party vendor; 2) prohibiting NOI members from watching DVD sermons of Louis Farrakhan, the spiritual leader of NOI; 3) and denying Plaintiff's requests for accommodations related to his religious activities. Plaintiff also alleges that Defendants Davidson and Saling denied him access to the courts and improperly confiscated his personal property. Finally, Plaintiff alleges that the Defendants took many of these actions in retaliation for Plaintiff's complaints and grievances. *See generally* Am. Compl. (ECF No. 10).[1]

To prevail on their respective motions for summary judgment, the parties must show that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party

---

[1] The operative complaint in this action is the Verified Amended Complaint filed on June 12, 2018 (ECF No. 10). Pursuant to subsequent rulings, Plaintiff was not allowed to proceed on Claims 1B, 2B, 3B, 4B, 5B, 6B, 7B, 8B, 9B, and 21, as those claims rely on theories of supervisory liability. *See* Order dated July 2, 2019 (ECF No. 74); Minute Order dated Dec. 12, 2019 (ECF No. 94). Plaintiff was also denied leave to add proposed Claims 22 through 37 on grounds of futility and prejudice. However, Plaintiff was permitted to file a Second Amended Complaint with proposed Claims 38 and 39. Plaintiff did not do so. Therefore, the pending claims in this action are Claims 1 through 20, as alleged in the Verified Amended Complaint.

To the extent Claims 1B, 2B, 3B, 4B, 5B, 6B, 7B, 8B, 9B, and 21 remain pending against Defendants Young, Holmes, and Kelly, Plaintiff cannot defeat summary judgment. Liability under § 1983 cannot arise from supervisory status, *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), and for the reasons explained *infra*, Plaintiff fails to establish a violation of his federal constitutional rights.

In his Cross-Motion for Partial Summary Judgment, Plaintiff also alleges that ODOC officials: 1) denied Plaintiff access to written religious sermons in March of 2018; 2) allowed Sunni AICs a second Eid-al-Fitr feast on July 1, 2018; and 3) allowed Louis Farrakhan DVDs to be moved from OSP to Mill Creek Correctional Facility in 2019. *See* Pl.'s Suppl. Mot. for Partial Summ. J. (ECF No. 160); *see also* Pl.'s Reply (ECF No 237). These facts occurred well after the events alleged in the Verified Amended Complaint and are not at issue in this action.

must present evidence of record, together with affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of fact for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

The Court must construe the evidence and all reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). Cross motions for summary judgment are evaluated separately, with the non-moving party for each motion given "the benefit of all reasonable inferences." *Am. Civil Liberties Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

### A. <u>Religious Freedom, Equal Protection, and Establishment Clause Claims</u>

#### 1. <u>Standards</u>

An AIC alleging a free exercise claim must show that the action in question substantially burdened the AIC's practice of religion. *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015); *see also Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008). To constitute an impermissible burden, the alleged conduct must do more than "inconvenience" a religious exercise; it "must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jones*, 791 F.3d at 1031-32 (citations omitted). The AIC need not "objectively show that a central tenet of his faith is burdened," because it is the "sincerity of his belief rather than its centrality to his faith that is relevant to the free exercise inquiry." *Shakur*, 514 F.3d at 884. While AICs retain First Amendment protections, "their rights under the Free Exercise Clause are necessarily limited by 'institutional objectives and by the loss of freedom concomitant with incarceration.'" *Al Saud v.*

*Days*, 50 F.4th 705, 714 (9th Cir. 2022) (citation omitted). "To that end, a prisoner's Free Exercise Clause claim will fail if the State shows that the challenged action is 'reasonably related to legitimate penological interests.'" *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

RLUIPA similarly prohibits prison officials from infringing on an AIC's religious practices. *See Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005) ("RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."). To establish a RLUIPA claim, a plaintiff must show that the defendant imposed "a substantial burden on [his] religious exercise." 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b); *Greene v. Solano Cty. Jail*, 513 F.3d 982, 988 (9th Cir. 2013) (finding that a complete prohibition against a religious exercise constitutes a substantial burden). If the plaintiff makes this showing, the burden then shifts to the defendant to prove that the burden imposed "serves a compelling government interest and is the least restrictive means of achieving that interest." *Shakur*, 514 F.3d at 889; 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b). "Only injunctive relief, not monetary damages, is available pursuant to RLUIPA, and the claim must be against defendants in their official capacities." *Al Saud*, 50 F.4th at 709; *see also Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014).

Under the Equal Protection Clause, AICs are protected from intentional discrimination based on their religion. *See Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (citing *Cruz v. Beto*, 405 U.S. 319, 321-22 (1972)), *abrogated on other grounds by Shakur*, 514 F.3d at 884-85. To sustain an equal protection claim, an AIC must present evidence of discriminatory intent. *See Serrano v. Francis*, 345 F.3d 1071, 1081-82 (9th Cir. 2003).

Finally, the Establishment Clause of the First Amendment "prohibits the enactment of a law or official policy that 'establishes a religion or religious faith, or tends to do so.'" *Newdow v. Lefevre*, 598 F.3d 638, 643 (9th Cir. 2010) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984)). In the prison context, officials must use neutral criteria when allocating resources to religious groups to avoid endorsing one religion over another. *Hartmann v. Cal. Dep't. of Corr. & Rehab.*, 707 F.3d 1114, 1126 (9th Cir. 2013). A state regulation or practice "does not violate the Establishment Clause if (1) the enactment has a secular purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not foster an excessive entanglement with religion." *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 762 (9th Cir. 1981).

## 2. Halal Diet (Claims 1, 6, 7, and 9)

Plaintiff alleges that Chaplain Thompson refused to provide Muslim AICs with halal meals prepared by a third-party vendor. Plaintiff claims that ODOC provides vendor-supplied kosher meals to Jewish AICs, and the failure to provide Muslim AICs with "similar" halal meals substantially burdens the exercise of his religion, violates his right to equal protection, and constitutes the unlawful establishment of religion. Am. Comp. at 1-2, 17-18, 20.

AICs in ODOC custody have three dietary options: 1) mainline fare; 2) vegetarian trays; and 3) kosher meals. Young Decl. ¶¶ 5-7, 9. Mainline fare and vegetarian trays are prepared in ODOC kitchens and served from the mainline. *Id.* ¶ 7. For AICs who observe a kosher diet, ODOC purchases prepared, frozen kosher entrees from vendors and supplements those meals with additional kosher menu items. *Id.* ¶ 9. ODOC purchases prepared kosher meals because of the difficulty in maintaining kosher kitchens and limited kitchen space in ODOC facilities. *Id.*

Muslim AICs who observe a halal diet are provided vegetarian trays, which consist of rice, beans, vegetables, fruit, bread, and optional dairy items. *Id.* ¶ 7. Stuart Young, ODOC's

Religious Services Manager, consulted with an Imam and confirmed that ODOC's vegetarian tray option conforms with halal requirements. Young Decl. ¶ 12. Muslim AICs may also self-select food items from the mainline, which includes poultry and fish. *Id.* ¶¶ 10, 13. According to Young, these items are prepared and served with properly sanitized cookware, tableware, and utensils in a manner that avoids contact with pork or alcohol, in compliance with Muslim dietary requirements. *Id.* ¶ 13. ODOC also provides Muslim AICs with sack lunches during Ramadan, to accommodate the needs of fasting, and special meals for the celebrations of Eid al-Fitr and Eid al-Adha. *Id.* ¶ 14. Halal products are also available for purchase through the canteen. *Id.* at ¶ 17.

### a.  Free Exercise Clause and RLUIPA Analysis

Defendants argue that the undisputed evidence of record set forth above makes clear that ODOC provides Plaintiff with food items that conform with a halal diet. Defendants thus contend that Plaintiff cannot show that their refusal to provide vendor-supplied halal meals infringes on his religious beliefs or imposes a substantial burden in violation of the Free Exercise Clause or RLUIPA. *Jones*, 791 F.3d at 1031-32; *Shakur*, 514 F.3d at 888-89.

In response to Defendants' motion, Plaintiff argues that the vegetarian meals do not meet his religious and dietary requirements, because they do not include halal meat and he cannot otherwise obtain halal meat from mainline or the canteen.[2] In other words, Plaintiff now argues that the failure to provide halal meat violates his rights to religious freedom. Notably, Plaintiff did not assert this allegation in his Verified Amended Complaint or in his initial Motion for Partial Summary Judgment. *See* Am. Compl. at 1 (alleging that Defendants failed "to institute a Halal religious diet for Muslim inmates in an Equal fashion as they provide Jewish inmates a

---

[2] Young maintains that the poultry on the mainline is halal compliant; Plaintiff contends that Young cites no evidence to support that assertion and Plaintiff disputes it. Further, according to evidence presented by Plaintiff, the halal food items available for purchase do not include meat, although halal tuna is available as an alternative protein source. Pl.'s Decl. in Opp'n, Exs. 6-7. I do not find these facts to be material and simply note them for the record.

Kosher religious diet"); Pl.'s Brief in Support at 12-13, 16 (arguing that Defendants' "refusal to implement a Halal Diet in a similar fashion as the Jewish Kosher Diet causes a substantial burden on my belief" and that Defendants refuse "to give Muslim inmates Halal trays at every meal from an outside vendor.) (ECF No. 28).[3]

Plaintiff also alleged for the first time in his response brief that the vegetarian meals "irritate" his stomach and cause him to "have gas all day" and "defecate several times a day," placing him "in a continuous state of uncleanliness and being impure." Pl.'s Opp'n to Mot. Summ. J. at 2 (ECF No. 201). Plaintiff argues that the effects of the vegetarian meals interfere with his ability to worship, because he "cannot maintain an Islamic state of being pure and clean," which he believes is "required." *Id.* at 5; *see Shakur*, 514 F.3d at 885, 889 (finding a prison's refusal to provide a Muslim AIC with a kosher meat diet implicated the Free Exercise Clause and potentially imposed a substantial burden under RLUIPA, when the AIC alleged "that the gastrointestinal distress caused by the vegetarian diet substantially burdened his religious activities and required him to find an alternative protein source consistent with Islam"). Again, Plaintiff did not allege gastrointestinal distress in the Verified Amended Complaint or in Plaintiff's initial Motion for Partial Summary Judgment.

Defendants object and argue that, because Plaintiff did not allege these facts in the operative complaint, he cannot now assert them to defeat summary judgment. I agree.

As noted above, Plaintiff brought these claims and moved for summary judgment on the specific ground that Defendants refuse to provide Muslim AICs with halal meals in the same manner that kosher meals are provided to Jewish AICs – through a third-party vendor. *See* Am.

---

[3] By Order dated March 9, 2022, Plaintiff's Supplement Motion for Partial Summary Judgment filed on January 3, 2022 (ECF No. 160) was construed as a Cross-Motion and Plaintiff's previously Motion for Partial Summary Judgment (ECF No. 28) was "reinstated" as a companion brief to that motion. *See* Minute Order dated March 9, 2022 (ECF No 183).

Compl. at 18 (alleging a violation of the Free Exercise Clause arising from the "failure to provide a Halal diet for me a Muslim inmate in a similar fashion as they provide a Kosher diet for Jewish inmates"); *see also* Pl.'s Brief in Support at 11 (arguing that there "is no other alternative for Muslim inmates to eat a Halal Diet tray[] from an outside vendor at every meal as Jewish inmates are able to do"). Plaintiff did not allege that discomfort caused by vegetarian meals substantially burdened his religious practices and left him with the choice of eating non-halal foods or not eating at all.

Moreover, Plaintiff did not allege that the consumption of halal meat is rooted in a sincerely held religious belief or that the unavailability of halal meat, or vendor-supplied meals for that matter, forces him to engage in conduct contrary to his beliefs. *Jones*, 791 F.3d at 1031-32 (explaining that substantial burden exists where the AIC is pressured to modify his behavior and violate his beliefs); *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (describing "a series of punishment designed" to coerce an AIC into violating his religious beliefs). Plaintiff's argument raises an entirely new theory of liability, and he cannot rely on it at this stage of the litigation.

Even if Plaintiff's newly raised allegations raised a genuine issue of fact as to whether Defendants substantially burdened a sincerely held religious belief, Defendants are entitled to qualified immunity.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly,* 580 U.S. 73, 78-79 (2017) (per curiam). The asserted constitutional right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 566 U.S. 658, 664 (2012) (brackets and quotation marks

omitted). Furthermore, "the clearly established right must be defined with specificity," *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam), and "'particularized' to the facts of the case." *White*, 580 U.S. at 79. When so applied, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted).

Plaintiff cites no clearly established right that requires prison officials to provide halal meat or meals supplied by third-party vendors. In fact, courts have held that "[p]risoners have no right to any particular quantum of meat in their diets," even religious diets. *Fonseca v. Cal. Dep't of Corr. & Rehab.*, 2015 WL 4172194, at *4 (S.D. Cal. July 10, 2015) (serving fish more often than beef did not substantially burden the plaintiff's sincerely held religious beliefs); *see also Shoemaker v. Williams*, 2013 WL 528306, at *2 (D. Or. Feb. 11, 2013) (rejecting an AIC's claim that a meat-free halal diet infringed on his religious rights when the plaintiff did not show that "his religion requires the consumption of meat" or caused him to modify his behavior).

Further, Plaintiff does not assert that he told Defendants of his gastrointestinal distress and requested alternative food items on that basis. Instead, Plaintiff complained about the appearance and quality of vegetarian items, particularly cooked beans. Pl.'s Decl. in Opp'n Exs. 28-32 (ECF No. 202). In these circumstances, a reasonable prison official would not have known that providing halal compliant vegetarian meals violated a clearly established federal right.

### b.  Equal Protection Clause Analysis

As explained above, ODOC provides Muslim inmates with meals and food items that comply with halal requirements. Further, Plaintiff presents no evidence plausibly suggesting that ODOC's failure to provide vendor halal meals evinces an intent to discriminate against Plaintiff

because of his faith. *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). Granted, an AIC is entitled "to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Shakur*, 514 F.3d at 891 (quoting *Cruz*, 405 U.S. at 322). However, "reasonable opportunities," are not the same as "identical" treatment. *Cruz*, 405 U.S. at 322, n.2. Equal protection does not require ODOC to obtain halal meals or meats from a vendor simply because it obtains kosher meals in that manner. *See Hartmann*, 707 F.3d at 1124.

### c.  Establishment Clause Analysis

For the same reasons, Plaintiff cannot sustain a claim under the Establishment Clause. ODOC provides foods items to ensure that Muslim AICs have a halal diet, and its dietary accommodations to meet other religious groups' needs do not advance or inhibit religion or foster an excessive entanglement with religion.

### 3.  NOI Sermons

Plaintiff alleges that Chaplain Thompson prohibits him and other NOI members from watching videorecorded sermons of Louis Farrakhan during their weekly Jumma prayer services. Instead, they are given Farrakhan's written materials to read and use. Plaintiff claims that this prohibition substantially burdens the practice of his religion in violation of RLUIPA and the Free Exercise and Establishment Clauses.

ODOC requires literature and videos from outside sources to be screened for security reasons and to prevent "inflammatory" materials from coming into prison facilities. Young Decl. ¶ 20. Inflammatory materials are those "deemed by [ODOC] to constitute a direct and immediate threat to the security, safety, health, good order, or discipline of the facility because it incites or advocates physical violence against others." Or. Admin. R. 291-131-0010(11). Defendants claim

that Louis Farrakhan has made "inflammatory statements and public calls to violence," and OSP chaplains will not provide his sermons to AICs without prior review. *See* Young Decl. ¶ 21 & Ex. 1 at 3.

According to Defendants, "ODOC's chaplains do not have the bandwidth to perform reviews of all of Louis Farrakhan's video sermons, which are around two hours per sermon." *Id.* ¶ 22. Chaplains instead review Louis Farrakhan's written materials, because "[w]ritten materials are more efficient for chaplains to review without interfering with their other chaplaincy obligations." *Id.* ¶¶ 22-23. Once approved, the written materials are provided to NOI AICs for their Friday Jumma prayer groups. *Id.* ¶ 24. Defendants maintain that ODOC Religious Services takes the same approach for all religious groups. *Id.* at ¶ 25. According to Defendants, no religious faith group regularly receives videotaped sermons due to the time required to review videotaped materials and they are instead provided with written materials. *Id.*

### a.  Free Exercise Clause and RLUIPA Analysis

Defendants argue that the evidence of record fails to show a substantial burden on Plaintiff's exercise of religion arising from the prohibition against viewing Louis Farrakhan DVDs. In response, Plaintiff vehemently disputes Defendants' contention that OSP chaplains lack the "bandwidth" to review the DVDs and argues that it is nonsensical to prohibit NOI members from viewing DVD sermons if chaplains have approved a written transcript of the very same sermon. *See* Pl.'s Opp'n to Mot. Summ. J. at 21, 24.[4] Plaintiff also contends that other religious groups are regularly allowed to view DVD sermons and lessons. *Id.* at 23-26.

These disputed facts are not material and do not preclude summary judgment when Plaintiff fails to meet his initial burden of showing that the general prohibition against viewing

---

[4] The record is unclear whether Louis Farrakhan's written materials reviewed by OSP chaplains are verbatim transcripts from his DVD sermons.

Louis Farrakhan DVDs substantially burdens the exercise of his religious practices. In support of his claim, Plaintiff argues that "Farrakhan's guidance and religious instructions in his sermons helps [Plaintiff] maintain and grow spiritually." Pl.'s Mot. in Support at 7. However, the written materials also provide Farrakhan's "guidance and religious instructions," and Plaintiff does not explain how viewing the DVDs is rooted in a religious belief or mandated by his religion.

Further, no evidence suggests that the prohibition on viewing DVD sermons coerces Plaintiff to forego sincerely held religious beliefs or to engage in conduct that violates those beliefs. *See id.* at 22 (discussing the substantial burden requirement); Pl.'s Mot. in Support at 2-4; *Jones*, 791 F.3d at 1032. Louis Farrakhan teachings are not banned outright, and written materials are provided for use during weekly NOI prayer services. Accordingly, Plaintiff cannot establish an RLUIPA or Free Exercise claim arising from the decision to provide NOI members with Farrakhan's written materials.

At minimum, Defendants are entitled to qualified immunity. Plaintiff cites no caselaw, and the Court is aware of none, holding that AICs possess a clearly established right to view videorecorded sermons of religious leaders despite the availability of written materials. *See City of Escondido*, 139 S. Ct. at 503 (reiterating that "the clearly established right must be defined with specificity").

### b.  Establishment Clause Analysis

Likewise, Plaintiff cannot sustain a claim under the Establishment Clause. Plaintiff and NOI members have access to written Farrakhan materials and participate in prayer services. Plaintiff presents no persuasive evidence that ODOC failed to employ neutral criteria or that the prohibition on DVD sermons condones or inhibit the practice of a certain religion. *See Hartmann*, 707 F.3d at 1126.

**4.  Participation in Chapel (Claims 2, 3, 10, 11, and 20)**

Plaintiff alleges that Chaplain Perlstein refused to ask an outside volunteer to assist with an NOI event and denied him access to the chapel after Plaintiff asked to speak with him. Plaintiff also claims that Chaplain Thompson failed to add him to the call-out list for the Eid prayer, causing him to miss the yearly event. Plaintiff contends that Defendants' actions violated his rights under the Equal Protection and Establishment Clauses and constituted unlawful retaliation.

**a.  Establishment Clause Analysis**

On July 2, 2017, at 1:00 p.m., Plaintiff asked Chaplain Perlstein to arrange for an outside NOI volunteer to attend the Eid Feast scheduled for 5:30 p.m. that day. Young Decl. Ex. 3 at 7. Chaplain Perlstein denied Plaintiff's request because the request was untimely, and Chaplain Perlstein was not the supervising chaplain for the NOI group. *Id.* ¶ 38 & Ex. 3 at 6. As of November 2016, Chaplain Stahlnecker had been responsible for addressing the needs of the NOI faith group. *Id.* at ¶ 30. Nonetheless, Plaintiff contends that Chaplain Perlstein violated his rights under the Establishment Clause. I disagree.

These facts, when construed in Plaintiff's favor, raise no plausible inference that Chaplain Perlstein officially condoned a particular religion or religious belief at the time he denied Plaintiff's last-minute request for an outside religious volunteer.

**b.  Equal Protection Clause Analysis**

Plaintiff also alleges that Chaplain Thompson failed to add his name to the Eid prayer call out list on September 1, 2017 and that Chaplain Perlstein denied Plaintiff's request to visit the chapel on September 17, 2017 and inform Chaplain Perlstein that another AIC wanted to attend a religious feast. Plaintiff alleges that these actions violated his right to equal protection.

Plaintiff cannot establish a violation of his equal protection rights on these facts. Plaintiff admits that he did not personally ask Chaplain Thompson to add him to the call out list on September 1, 2017. Rather, Plaintiff claims that "Sunni brother Deniz Aydiner wrote Thompson a kyte requesting that all Sunni and NOI Muslims be added to the Eid prayer call-out." Am. Compl. at 4. Moreover, Chaplain Thompson was not in charge of scheduling NOI activities at that time; as Chaplain Perlstein informed Plaintiff in response to a grievance, Chaplain Stahlnecker was responsible for scheduling NOI events. Young Decl. ¶¶ 30, 39 & Ex. 3 at 6. These facts do not plausible suggest religious discriminatory intent on the part of Chaplain Thompson.

Likewise, the undisputed facts do not raise an inference that Chaplain Perlstein discriminated against Plaintiff due to his religion. On September 17, 2017, Plaintiff asked Sgt. Bowden to call Chaplain Perlstein and request permission for Plaintiff to speak with him about an AIC who wished to attend the Eid feast later that evening. Young Decl. ¶ 16. According to Plaintiff, Chaplain Perlstein told Sgt. Bowden that Plaintiff would not be granted permission to go to the chapel because Plaintiff had filed a grievance against him. Chaplain Perlstein avers that he denied Plaintiff's request because it was made at the last minute and Plaintiff should have directed the request to the supervising chaplain for the NOI group. *Id.* ¶ 42 & Ex. 4 at 8.

This evidence reflects no intent to discriminate against Plaintiff or treat him differently because of his religion. In fact, Plaintiff's own allegations do not assert discriminatory intent but instead claim only retaliation. *See* Am. Compl. at 6.

### c.  First Amendment Retaliation Analysis

As noted, Plaintiff alleges that Chaplains Thompson and Perlstein unlawfully retaliated against him on September 1 and 17, 2017, because of his prior grievances.

14 - OPINION AND ORDER

To state a viable claim of First Amendment retaliation, a plaintiff must allege five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Plaintiff fails to establish these elements.

First, Plaintiff fails to establish that either chaplain took adverse action against him, action that must cause more than "minimal" harm. *Id.* at 567-69 & n.11. Chaplain Thompson was not in charge of call outs for the NOI group, and Plaintiff presents no evidence that she received a request to place Plaintiff on the list and intentionally ignored it. Plaintiff also fails to show that Chaplain Perlstein's denial of Plaintiff's request to visit the chapel was adverse; Plaintiff alleges no harm that arose from the denial. Second, Plaintiff fails to present any admissible evidence showing that either chaplain denied the requests "because of" Plaintiff's protected conduct. Instead, Plaintiff relies on speculation and hearsay statements. Finally, Plaintiff fails to show that Defendants' conduct failed to advance legitimate correctional goals, given that Plaintiff's requests should have been directed to the chaplain overseeing NOI activities.

In sum, Plaintiff fails to show that Chaplains Thompson and Perlstein violated his rights under the First and Fourteenth Amendments.

## B. Law Library Claims (Claims 12 through 17)

Plaintiff next alleges that on January 19, 2017, he was in the OSP law library and asked Defendant Davidson to make copies of documents to support a Notice of Appeal and an Application for Leave to Proceed in Forma Pauperis he was required to file with the Ninth

Circuit. Ms. Davidson denied his request, and Plaintiff alleges that her refusal caused him to miss the Notice of Appeal deadline of deadline of January 19, 2017. Plaintiff further alleges that on January 30, 2017, he asked Ms. Davidson to make addition copies in an unrelated case. Ms. Davidson again refused to make copies for Plaintiff and allegedly caused him to miss the January 30, 2017 deadline in that case.[5] Plaintiff alleges that Ms. Davidson's refusals denied him access to the courts and constituted unlawful retaliation in violation of the First Amendment.[6]

### a.  Access to the Courts Analysis

To state a denial of access to the courts, a plaintiff must allege facts giving rise to a reasonable inference that he suffered an actual injury to contemplated or existing litigation. *Lewis v. Casey,* 518 U.S. 343, 351 (1996); *Nevada Dep't of Corr. v. Greene,* 648 F.3d 1014, 1018 (9th Cir. 2011) (explaining that actual injury requires prejudice, "such as the inability to meet a filing deadline or to present a claim"). Further, "the underlying cause of action and its lost remedy must be addressed by allegations in the complaint," and "be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher v. Harbury,* 536 U.S. 403, 416 (2002); *see also Rogers v. Giurbino,* 625 Fed. App'x 779, 782 (9th Cir. Aug. 31, 2015) (affirming dismissal of access to the courts claim for failure to allege an arguably meritorious "lost" cause of action).

Plaintiff fails to present evidence of actual injury to a nonfrivolous cause of action. Plaintiff does not provide sufficient facts about either underlying action to show that they had

---

[5] OSP is not a participant in the state or federal courts' electronic filing programs and self-represented AICs must file all legal work by mail. Polk Decl. ¶ 9. Under the mailbox rule, documents are deemed filed the day the document is given to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 276 (1988).

[6] Plaintiff also alleges that Ms. Davidson's refusal to provide copies on January 19 and 30, 2017 violated his rights to equal protection. Plaintiff presents no facts that remotely implicate the Equal Protection Clause and summary judgment is granted on these claims without further discussion. *See* Am. Compl. at 22-25; Pl.'s Decl. in Opp'n at 18-19.

merit and were not frivolous. In fact, the Notice of Appeal related to Case No. 6:14-cv-01285-AA, and there, this Court found that "any appeal from the order granting defendants' motion for summary judgment would be frivolous and not made in good faith." *Douglas v. Cruz, et al.*, Case No. 6:14-cv-01285-AA (ECF Nos. 52, 65). Thus, Plaintiff fails to present evidence that he suffered actual prejudice to non-frivolous claim because of Ms. Davidson's actions, and he cannot defeat summary judgment.

### b. First Amendment Retaliation Analysis

Plaintiff also fails to raise a plausible inference of retaliation by Ms. Davidson. Plaintiff alleges and the evidence reflects that Ms. Davidson denied his copy requests because she felt they were untimely and voluminous, and because Plaintiff did not present a court order establishing a deadline for the requested documents. Am. Compl. 22-23; Pl.'s Decl. in Opp'n at 18-19; Polk Decl. Ex. 1 at 9. Plaintiff presents no evidence suggesting that Ms. Davidson took adverse action "because of" Plaintiff's protected complaints and grievances.

### C. Loss of Property (Claims 18 and 19)

Finally, Plaintiff alleges that Officer Saling improperly confiscated "2 Big Bags of Supplement Powders" after Plaintiff was sent to the disciplinary segregation unit (DSU) on June 5, 2016. Am. Compl. at 25-26. Plaintiff contends that Officer Saling deprived him of a property interest and did so in retaliation for Plaintiff's grievances. Officer Saling maintains that he did not collect Plaintiff's property and only inventoried it after Plaintiff was sent to DSU, and he did not see the supplements. Saling Decl. ¶¶ 5-6, 8.

Plaintiff fails to establish a retaliation claim against Saling, as Plaintiff presents no evidence plausibly suggesting that Saling knew of Plaintiff's grievances and took adverse action against Plaintiff because of them.

Plaintiff also fails to establish a § 1983 claim arising from the unlawful confiscation of his property. Generally, the deprivation of a protected property interest requires a meaningful opportunity to be heard at a meaningful time. *Zinerman v. Burch*, 494 U.S. 113, 126-27 (1990). When a state official's deprivation of property is authorized by established state procedures, regulations, or statutes, a pre-deprivation hearing is typically required. *See id.* at 127, 132; *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985). However, when the alleged deprivation of property arises from an unauthorized action by a prison official, whether intentional or negligent, the Supreme Court "has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Zinerman*, 494 U.S. at 128; *see Hudson v. Palmer*, 468 U.S. 511, 533 (1984); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).

Plaintiff does not allege that the confiscation of his property was authorized by Oregon law or carried out in accordance with an established ODOC procedure. Instead, Plaintiff alleges that Officer Saling confiscated his property for retaliatory purposes. Based on these allegations, the Oregon Tort Claims Act provides Plaintiff with an adequate post-deprivation remedy for the alleged confiscation of his property and satisfies his right to procedural due process. *Gutierrez v. Williams*, 505 Fed. App'x 659, 660 (9th Cir. Jan. 17, 2013) (citing Or. Rev. Stat. § 30.260).

Finally, Plaintiff cannot pursue a state law claim for conversion in this Court. The sole cause of action under Oregon law for any tort of ODOC officers or employees acting within the scope of their employment or duties, as alleged here, is an action against ODOC under the Oregon Tort Claims Act. Or. Rev. Stat. § 30.265(1). However, ODOC is an arm of the State and is immune from suit in federal court for pendent state law claims. *Pena v. Gardner*, 976 F.2d 469, 474 (9th Cir. 1992). Accordingly, Plaintiff cannot defeat summary judgment.

18 - OPINION AND ORDER

CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 155) is GRANTED, Plaintiff's Motion for Partial Summary Judgment (ECF No. 160) is DENIED, and this action is DISMISSED. Any appeal from this Order or the Judgment dismissing this action would be frivolous or taken in bad faith, and Plaintiff's IFP status is REVOKED.

IT IS SO ORDERED.

DATED this <u>29th</u> day of September, 2023.


_____
/s/Ann Aiken
ANN AIKEN
United States District Judge

19 - OPINION AND ORDER